2004 WY 46

**French Carter WALLOP, Appellant (Defendant),**

v.

**Malcolm WALLOP, Appellee (Plaintiff).**

**Malcolm Wallop, Appellant (Plaintiff),**

v.

**French Carter Wallop, Appellee (Defendant).**

Nos. 02–248, 02–249.

Supreme Court of Wyoming.

April 27, 2004.

Representing Appellant French Carter Wallop: Karen Budd–Falen of Budd–Falen Law Offices, P.C., Cheyenne, WY; and Clark W. Sessions and T. Mickell Jimnez–Rowe of Clyde, Snow, Sessions & Swenson, P.C., Salt Lake City, UT. Argument by Mr. Sessions.

Representing Appellee Malcolm Wallop: Ann M. Rochelle of Shively, Taheri & Rochelle, P.C., Casper, WY; and Rex Arney of Brown, Drew & Massey, LLP, Sheridan, WY. Argument by Ms. Rochelle.

Before LEHMAN and VOIGT, JJ., and DONNELL, BROOKS, and JAMES, District Judges.

LEHMAN, Justice.

[¶ 1] Appellant/Cross–Appellee French Carter–Wallop (Wife) appeals the district court's property division upon divorce, while Appellee/Cross–Appellant Malcolm Wallop (Husband) appeals the district court's ruling regarding his government retirement account. We affirm in part, modify in part, and reverse and remand in part.

## FACTS

[¶ 2] Husband and Wife were married May 26, 1984. After nearly sixteen years of marriage, the parties separated on April 24, 2000. Two years later their divorce case was tried before the district court. Substantial testimony was given and numerous exhibits submitted. The parties each filed proposed findings of fact and conclusions of law. The district court issued its decision letter on June 20, 2002, and entered the final Judgment and Decree of Divorce on August 13, 2002. These appeals followed.

## STANDARD OF REVIEW

[¶ 3] We recently recognized our long-standing standard of review in *Hall v. Hall*, 2002 WY 30, ¶¶ 11–12, 40 P.3d 1228, ¶¶ 11–12 (Wyo.2002):

> Wyo. Stat. Ann. § 20–2–114 (Lexis 1999) governs the division of marital property:
>
> > In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children.
>
> Decisions regarding the division of marital property are within the trial court's sound discretion, and we will not disturb them on appeal unless there was an abuse of discretion. *Davis v. Davis*, 980 P.2d 322, 323 (Wyo.1999). An abuse of discretion occurs when the property disposition shocks the conscience of this court and appears to be so unfair and inequitable that reasonable people cannot abide it. *Id.*

## DISCUSSION

### Ranch Valuation

■ [¶ 4] At trial, the primary asset in contention was the Canyon Ranch. Three separate valuations were prepared for the ranch ranging from $4.6 to $15 million. The first appraisal, performed in 1997 by Mark Sonderby, valued the ranch together with other related property at $5.635 million. This appraisal was performed on behalf of both Husband and Wife for tax and loan purposes. The second appraisal occurred in 2000. Theo Hirschfeld, a licensed certified appraiser acting as an expert witness for Husband, valued the ranch at that time at $4.6 million. Finally, Richard Wayne Lewis, a licensed real estate broker with Sotheby's International Realty, valued the ranch at $11 to $15 million and testified at trial as an expert witness for Wife. In its Judgment and Decree of Divorce, the district court accepted the $4.6 million appraisal. Wife contends the district court abused its discretion in doing so because the court failed to discuss or fully explain its determination.

■ [¶ 5] As stated previously, the trial court has broad discretion in making a distribution of marital property upon divorce. *Hall*, at ¶¶ 11–12. Further, with respect to the valuation of marital assets, trial courts must exercise discretion and adjudicate marital property dispositions on a case-by-case basis using the best possible valuation method appropriate for that particular case. *Neuman v. Neuman*, 842 P.2d 575, 582 (Wyo.1992).

[¶ 6] The district court addressed the Canyon Ranch in its Judgment and Decree of Divorce, in applicable part, as follows:

1. The Canyon Ranch consists of about 3,090 deeded acres. The Ranch raises livestock and operates as a bird-hunting resort.

2. Approximately 2,000 acres of the Canyon Ranch are restricted by a conservation easement.

3. Richard Lewis, an agent of the Sotheby International Realty Office in Jackson, Wyoming (not a certified appraiser), offered an opinion that the value of the Canyon Ranch is $11 to $15 million. This estimate relies in part on information taken from the Internet and does not properly consider parcels within the ranch borders owned by others.

4. In December of 1997, a certified appraiser, Mark Sonderby, appraised the Canyon Ranch at $5.635 million. (Ex. CCCC)

5. Effective April 24, 2000, certified appraiser, Theo Hirschfeld, appraised the Canyon Ranch at $4.6 million (Ex. 545). The Court accepts this value.

[¶ 7] While the district court did not set forth an extended discussion of its reasons for accepting Mr. Hirschfeld's appraisal rather than Mr. Lewis', the court did appropriately distinguish the two valuations. First, the district court recognized a distinction between the qualifications of the experts involved, noting that Mr. Hirschfeld was a licensed certified appraiser while Mr. Lewis was not.[1] In addition, the district court noted that Mr. Lewis' estimate relied upon information from the internet which did not take into account parcels within the ranch borders owned by others.

[¶ 8] The transcript of the trial also discloses that Mr. Lewis' valuation relied on second-hand, somewhat dated information from previous appraisals, including measurements of the buildings located on the ranch. Mr. Lewis failed to provide the district court with his calculations and many of the documents upon which he relied. When calculating his appraisal, Mr. Lewis used comparable but distant properties located in Colorado and Montana. He additionally relied on other properties with building improvements that were dramatically different than those located on the Canyon Ranch. Many of the comparables he used were of listing prices, as opposed to actual sales prices. Finally, Mr. Lewis failed to adequately take into account the substantial conservation easement that exists on the ranch and made a market evaluation as opposed to an actual appraisal of the property.

[¶ 9] On the other hand, Mr. Hirschfeld's appraisal was conducted using the Uniform Standards of Professional Appraisal Practice. Specifically, Mr. Hirschfeld's valuation was based on an actual sales approach supported by a cost analysis. The substantial and complete bases for Mr. Hirschfeld's valuation of the Canyon Ranch were included within his admitted appraisal report. The appraisal performed by Mr. Hirschfeld was based upon his own personal involvement with the subject property and the comparable properties.

[¶ 10] We cannot conclude, therefore, that the district court abused its discretion when it chose to rely upon Mr. Hirschfield's valuation. Adequate reasons exist to support the district court's determination. Moreover, issues of credibility and the weight to be given to testimony are matters to be resolved by the trier of fact, not an appellate court. Thus, we may not substitute our judgment for that of a trial court with respect to issues concerning credibility. *Carlton v. Carlton,* 997 P.2d 1028, 1035 (Wyo. 2000) (citing *Semler v. Semler,* 924 P.2d 422, 424 (Wyo.1996) and *Deen v. Deen,* 774 P.2d 621, 622 (Wyo.1989)).

### Timing of Property Valuation/Applicable Date of Division

[¶ 11] Wife asserts the district court erred when it chose to value the Canyon Ranch and other marital property at the approximate date of the parties' separation. This court has not identified with particularity the time at which marital property must be valued when dividing property in a divorce. Rather, this court has taken the general approach that the appropriate time of valuation is a matter within the broad and sound discretion of the trial court. Similarly, this court has always allowed the trial court open discretion in determining the effective date of the division. *See generally Breitenstine v. Breitenstine,* 2003 WY 16, 62 P.3d 587 (Wyo.2003); *McCulloh v. Drake,* 2001 WY 56, 24 P.3d 1162 (Wyo.2001); *Bailey v. Bailey,* 954 P.2d 962 (Wyo.1998); *Neuman,* at 582; *Overcast v. Overcast,* 780 P.2d 1371 (Wyo.1989); *Sellers v. Sellers,* 775 P.2d 1029 (Wyo.1989); *Igo v. Igo,* 759 P.2d 1253 (Wyo. 1988); *David v. David,* 724 P.2d 1141 (Wyo. 1986); *Grosskopf v. Grosskopf,* 677 P.2d 814 (Wyo.1984); *Paul v. Paul,* 616 P.2d 707 (Wyo.1980); and *Parsons v. Parsons,* 64 Wyo. 198, 189 P.2d 159 (1948). Further, Wyo. Stat. Ann. § 20–2–114 (Lexis 1999) demands such an approach.

[¶ 12] Although states vary in their approaches regarding when marital property should be valued or effectively split, many

---

1. The district court also specifically recognized that Mr. Sonderby was a certified appraiser.

states, like Wyoming, have adopted a discretionary analysis. *See* 24 Am.Jur.2d *Divorce and Separation* § 575 (1998) and Lee R. Russ, Annotation, *Proper date for valuation of property being distributed pursuant to divorce*, 34 A.L.R.4th 63 (1984). Further, we agree with the Kansas Supreme Court's reasoning when it addressed the appropriateness of a discretionary analysis in considering the timing of the valuation of marital property:

A review of case law from other jurisdictions on this issue illustrates the wide divergence in opinion which exists regarding the time to value marital assets pursuant to a divorce. The various time periods include: date of separation, filing of divorce, after discovery, date of trial, date of divorce decree, date of distribution, and at the discretion of the trial court. Accordingly, there are numerous cases adopting widely divergent views of the appropriate time to value marital assets pursuant to a divorce.

Cases supporting the date of separation include: *Hunt v. Hunt*, 698 P.2d 1168 (Alaska 1985); *Savides v. Savides*, 400 Mass. 250, 508 N.E.2d 617 (1987); *Swindell v. Lewis*, 82 N.C.App. 423, 346 S.E.2d 237 (1986); the date of filing for divorce: *Jolis v. Jolis*, 111 Misc.2d 965, 446 N.Y.S.2d 138 (1981); the date of the trial: *Taylor v. Taylor*, 736 S.W.2d 388 (Mo. 1987); *Briceno v. Briceno*, 566 A.2d 397 (R.I.1989); the date of dissolution: *In re Marriage of Brooks*, 138 Ill.App.3d 252, 93 Ill.Dec. 166, 486 N.E.2d 267 (1985); *In re Marriage of Kramer*, 177 Mont. 61, 580 P.2d 439 (1978); *In re Marriage of Brandt v. Brandt*, 145 Wis.2d 394, 427 N.W.2d 126 (1988); and the date of property distribution: *Grandovic v. Grandovic*, 387 Pa.Super. 619, 564 A.2d 960 (1989); *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534 (1988).

However, our research discloses that the greater number of jurisdictions follow the rule stated in [*In re Marriage of*] *Schwien* [, 17 Kan.App.2d 498, 839 P.2d 541 (1992)] and allow the trial court broad discretion to value marital assets at different times depending upon the facts of the individual case. Some examples include: *Bachtle v. Bachtle*, 494 A.2d 1253 (Del.Supr.1985);

*Taylor v. Taylor*, 436 N.E.2d 56 (Ind. 1982); *Thompson v. Thompson*, 189 Mich. App. 197, 472 N.W.2d 51 (1991); *In re Marriage of Halverson*, 230 Mont. 226, 749 P.2d 518 (1988); *Hillebrand v. Hillebrand*, 130 N.H. 520, 546 A.2d 1047 (1988); *Bednar v. Bednar*, 193 N.J.Super. 330, 474 A.2d 17 (1984); *Wallace v. Wallace*, 733 S.W.2d 102 (Tenn.App.1987); *Mitchell v. Mitchell*, 4 Va.App. 113, 355 S.E.2d 18 (1987).

In addition to the case law from numerous jurisdictions supporting the discretionary rule stated in *Schwien*, several leading secondary authorities also recommend this rule of law. Golden, *Equitable Distribution of Property* § 7.01, p. 251 (Turner 1992 Supp.) states: "A growing number of courts are refusing to establish any one mandatory date of valuation. These courts recognize that different dates should control in different cases and they leave the decision to the trial court's discretion."

Further discussion on this issue can be found in Goldberg, *Valuation of Divorce Assets* § 1.10, p. 15 (1984), which states: "[T]he most ideal approach employed by the courts to solve the problem of when assets should be valued holds that the trial court must be permitted to utilize alternative valuation dates in order to make truly equitable awards consistent with legitimate expectations of the parties."

In 27B C.J.S., *Divorce* § 545, we find:

"Under some statutes, marital property must be valued as of the date of divorce or dissolution of marriage, or date of separation, or as of the date of the decree, or as of the date of the hearing on disposition of the property if such hearing precedes the date of the decree. Generally, however, in the absence of statutory provisions to the contrary, no single event in the dissolution process necessarily establishes the time for proper valuation of property, especially the time for proper evaluation of marital assets which fluctuate in value, whether it be the date of filing, the date of trial, or the date of dissolution or divorce itself; and the time for valuation

is a matter for the trial court to determine in the exercise of its discretion.

*"Thus, equitable factors may dictate a valuation date, and in order to do equity in dividing property in a divorce case, the trial court must be permitted to utilize alternative valuation dates, where reasonable under the facts and circumstances presented in the particular case, in order to make truly equitable awards consistent with the legitimate expectations of the parties."* (Emphasis added.)

We recognize that there are numerous factual situations which might warrant valuing the assets at a time other than the date of the filing of the divorce action. Some of those situations include: post-separation changes in value due to the efforts of one party; a lack of financial involvement of one party; purposeful dissipation of assets subsequent to separation; and bad faith efforts to delay a divorce proceeding. However, we also recognize that mere passage of time between separation and divorce may not warrant valuation at the time of separation. We are also sensitive to and encourage legitimate efforts by either party to reconcile differences after a separation in attempts to save the marriage. Thus, we expect that trial courts will give full consideration to such efforts in determining what date is appropriate for valuation of the assets.

We are not convinced that it is appropriate, let alone prudent, to tie the hands of the trial courts in their efforts to comply with the statute and make a just and reasonable division of property. Each divorce case is different, and we believe the long-standing rule which affords the trial court broad discretion in determining the date to value marital assets is the appropriate one. This court has recognized on numerous occasions the importance in allowing a trial court broad discretion in determining what is just and reasonable in the division of marital property. The breadth of this discretion was recognized in *LaRue v. LaRue*, 216 Kan. 242, 250, 531 P.2d 84 (1975), where the court stated: "Nowhere in any of our decisions is it suggested that a division of all the property of the parties must be an equal division in order to be just and reasonable." The legislature has left this discretion to the trial courts, and if there is to be a change in that discretion then it is a matter for the legislature. In conclusion, we agree with the reasoning put forth in *Berish v. Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183 (1982), supporting this rule. The pertinent portion of that opinion states:

"The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations. The public policy giving rise to equitable distribution is at least in part an acknowledgment that marriage is a shared enterprise or joint undertaking. While marriage is literally a partnership, it is a partnership in which the contributions and equities of the partners do differ from individual case to individual case. Assets acquired by the joint efforts of the parties should be, on termination, eligible for distribution. But the precise date upon which any marriage irretrievably breaks down is extremely difficult to determine, and this court will avoid promulgating any unworkable rules with regard to this determination. It is the equitableness of the result reached that must stand the test of fairness on review." 69 Ohio St.2d at 319–20, 432 N.E.2d 183.

*In re Marriage of Cray*, 254 Kan. 376, 867 P.2d 291, 298–99 (1994). The Kansas Supreme Court concluded that in Kansas a trial court has discretion to value the marital assets at the time of separation, at the time the divorce petition is filed, at the time of the divorce hearing, or as the facts in each case dictate. *Id.*, at 299. The Kansas Supreme Court then held that the trial court did not abuse its discretion when it valued the marital property at the date of separation because substantial competent evidence supported such a conclusion. *Id.*, at 300. We conclude Wyoming trial courts have the same discretion.

[¶ 13] In this instance, the evidence presented at trial established that Husband and Wife separated on April 24, 2000, and there-

after, in essence, lived their own distinct lives. As such, we hold that the district court did not abuse its discretion in selecting that year as the date of valuation and division of the marital property.

## Property Division

### A. The Canyon Ranch

 [¶ 14] Wife's primary contention is that the trial court inequitably divided the marital assets. She asserts that Husband was awarded the Canyon Ranch, which caused a substantial imbalance in the value of the property awarded each party. Husband counters that the trial court properly considered the merits of the parties and through whom the Canyon Ranch and other property were acquired in fashioning a just and equitable division.

[¶ 15] This court in *Hall v. Hall,* at ¶¶ 13–14, addressed a similar argument. In that case this court recognized:

The trial court possesses a great amount of discretion in dividing marital property. A just and equitable division of property is just as likely not to be equal. *Carlton v. Carlton,* 997 P.2d 1028, 1032 (Wyo.2000). Although the trial court cannot divide the property in such a way that it would punish one of the parties, it may consider fault of the respective parties, together with all other facts and circumstances surrounding the dissolution of the marriage in dividing a couple's marital assets. 997 P.2d at 1034. We are required to limit our review of the record to an evaluation of whether the trial court's decision was supported by sufficient evidence, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Id.* Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Id.*

*Id.,* at ¶ 14. In *France v. France,* 902 P.2d 701, 704 (Wyo.1995) (emphasis added), we stated:

The property which is subject to division under our statute consists of property *which is the product of the marital union and was acquired during the course of the marriage by the joint efforts of the parties. ... Wyo. Stat. § 20–2–114 includes as a factor, "the party through whom the property was acquired...." In Warren v. Warren, 361 P.2d 525 (Wyo. 1961), we held property, which was inherited by or given to that party, can properly be awarded to the party by whom it was inherited or given. In Paul v. Paul, 616 P.2d 707 (Wyo.1980), we held it is not an abuse of discretion to award to a party the property he brought to the marriage.*

[¶ 16] In *France,* we affirmed a property division in which the wife received an overwhelming majority of the property. We agreed with the trial court that, because most of the couple's property was brought into the marriage by the wife or inherited by her, she was the appropriate party to receive it upon their divorce. *France,* at 706. *In accord see Pittman v. Pittman,* 999 P.2d 638, 640 (Wyo.2000), where we held that when most of the property was brought into the marriage by one party or acquired during the marriage through that party, it is not unreasonable that the party through whom the property was acquired receive a larger share.[2]

[¶ 17] In the case at hand, it is undisputed that the Canyon Ranch has been in Husband's family since 1889. In 1980, Husband and his two sisters inherited the ranch, whereupon Husband bought his sisters' interests resulting in his incurring a $2.4 million debt. Prior to the marriage, Husband sold and exchanged portions of the ranch to reduce some of his ranch indebtedness. Throughout the 1980s and 1990s, Husband continued to make contributions to the ranch. In 1986, Husband sold his McLean, Virginia home for $912,000 and applied $650,000 toward the Canyon Ranch loan. In 1987, Husband pledged $500,000 of personal stock to continue the Canyon Ranch loan and ultimately surrendered this stock in 1991 to

**2.** It should be recognized that in both *France* and *Pittman,* the trial court applied the parameters

set forth in Wyo. Stat. § 20–2–114 in accordance with our established case law.

make loan payments on the ranch. In 1990 and 1992, Husband sold additional ranch property to make payments on the Canyon Ranch. In addition, Husband personally took out a $120,000 loan in 1996 to pay $75,000 on the Canyon Ranch mortgage.

[¶ 18] During the trial, Ed Hoffman, a certified public accountant, testified regarding the contributions to the ranch made by Husband and Wife. Mr. Hoffman's analysis showed that from 1993 to 2000, Husband made $4,428,231.21 in net contributions, while Wife had made only $6,054.62 in net contributions.

[¶ 19] In 1992, Husband and Wife formed the Wallop Family Limited Partnership (Partnership) for estate planning purposes in an effort to pass the Canyon Ranch to Husband's four children and Wife's son.[3] The initial members of the Partnership were Husband with forty-nine percent ownership, Wife with forty-nine percent ownership, and Canyon Ranch, LLC with two percent ownership. Husband and Wife each owned one-half of Canyon Ranch, LLC. Wife argues the district court failed to recognize her interests in the Partnership and Canyon Ranch, LLC when awarding the ranch to Husband.

[¶ 20] In making this award, the district court provided the following:

Property inherited by one party in a divorce can properly be awarded to that party. *Warren v. Warren*, 361 P.2d 525 (Wyo.1961) and *France v. France*, 902 P.2d 701 (Wyo.1995). Neither the acquisition of [the Partnership] real estate nor any significant increase in its current value can be attributed solely to [Wife]. [Husband] made [Wife] a record owner of the [Partnership]. As in *France*, the transfer was to effectuate an estate plan that assumed a continuing marriage. It would be a "windfall" to a transferee, within any marriage, for the Court to consider all estate plan transfers as gifts that always survive divorce.

[¶ 21] On June 2, 1993, Husband signed a Quitclaim Deed transferring approximately 3,089 acres of the Canyon Ranch to the Partnership and in addition quitclaimed another 44.34 acres of the ranch, known as the Homesite, to himself and Wife. On October 15 of that same year, Husband and Wife quitclaimed 3.06 acres of the Homesite to the Partnership on which to build a lodge. In 1995, 1996, and 1997, Husband and Wife gifted a small percent interest in the Partnership to each of the five adult children.

[¶ 22] The Certificate and Agreement of the Partnership provides that contributions and distributions by each partner must be reflected in the partners' respective capital accounts and that the balances of these accounts would provide a basis for determining percentages of ownership. The Partnership tax returns attributed ownership in the Partnership to Wife, the Canyon Ranch, LLC, and the children.

[¶ 23] Given the established facts noted above and in line with our holding in *France*, it was proper for the district court to recognize and consider Husband's inheritance of the Canyon Ranch coupled with his actual contributions to the ranch over the years. Furthermore, there was sufficient evidence to support the district court's determination that the actual intent of the Canyon Ranch transfers was to enable Husband and Wife to transfer ownership of the ranch to their adult children with minimal tax consequences. Such determination is also supported by our holding in *France*.

[¶ 24] In *France*, husband and wife initiated an estate plan in an effort to minimize tax consequences and provide the maximum estate for their disabled daughter. Accordingly, wife gifted stock in her family's closely held ranching corporation, which she had received from her parents, to her husband making him a forty-five percent shareholder in the corporation. Upon dissolution of the marriage, the trial court awarded all of the stock in the corporation to the wife. In affirming the award, this court said:

It is apparent that the purpose of the gift of the stock to the husband was to effectuate the estate plan on the assump-

**3.** Husband has four adult children who are not a product of the marriage between Husband and Wife, while Wife has an adult son through a different marriage. Husband and Wife have no children together.

tion they still would be married when the first one died.... We are satisfied, given the record demonstrating the stock ... came to the parties by virtue of wife's inheritance from her parents and the purpose for which the gift of stock was made to the husband, that the trial court did not abuse its discretion. The distribution of the property made by the court was fair, just, and manifested an exercise of discretion that is unassailable.

*France*, at 706. Therefore, this court made it clear that the parties' underlying motivation and intent behind their actions may be dispositive.

[¶ 25] Wife asserts the *France* case is not applicable in this instance. She argues that *France* stands for the proposition that it is just and equitable to set property over to one party without any corresponding offset to the non-donee spouse of the value of their interest therein *only* when 1) the non-donee spouse has made absolutely no contribution to the donee spouse's property, 2) neither party is at fault when the parties' merits are considered, and 3) the source and time of acquisition and maintenance of the identified separate property are readily traceable. We disagree with Wife's limited interpretation of *France*.

■ [¶ 26] We have emphasized time and time again that when making marital property distributions upon divorce, a trial court must consider a number of factors. Specifically, in rendering such a decision the trial court must have regard for 1) the respective merits of the parties, 2) the condition in which the parties will be left by the divorce, 3) the party through whom the property was acquired, and 4) the burdens imposed upon the property for the benefit of either party and children. *Hall*, at ¶¶ 11–12. The trial court has the discretion to determine what weight should be given each of these individual factors.

[¶ 27] Wife further cites the cases of *Barton v. Barton*, 996 P.2d 1, 4 (Wyo.2000) and *Tyler v. Tyler*, 624 P.2d 784, 785–86 (Wyo. 1981) for the proposition that when property is taken into a marriage and placed into the names of both spouses, even when consideration is furnished by only one party, there is a rebuttable presumption that a gift of one-half interest was intended for the other spouse. The evidence in this case sufficiently rebutted this presumption. Again, the evidence supports the finding that the actual intent of the parties was to place the Canyon Ranch in a position to pass to the parties' adult children with minimal tax consequences if the marriage continued.[4]

[¶ 28] Our holding is also consistent with our recent opinion in *Breitenstine*, 2003 WY 16, 62 P.3d 587, although Wife asserts otherwise. In that case, the wife was awarded a portion of husband's inherited property upon divorce. Much of husband's inheritance was placed into a joint account that both parties had access to and utilized of their own free will. These funds were commingled with other marital property, and thereafter the couple lived off these funds or the income from investments purchased with these funds in both their names, husband's name, wife's name, and the childrens' names. The couple also built a home in Wyoming using a substantial amount from their joint account to pay for the home. Later, the couple formed various trusts and transferred a substantial portion of their marital assets to the trust. Trusts were also created for their children funded with marital assets. However, husband converted funds from the trusts for his own personal use until he was removed as trustee. *Breitenstine*, at ¶¶ 11–12. Given these facts this court, stated:

> A reading of the statute [Wyo. Stat. Ann. § 20-2-114 (LexisNexis 2001)] indicates that the party through whom the property was acquired is *one* of the multiple factors the trial court considers in determining the

4. It is apparent the district court understood this principle and recognized Husband's intent to gift one-half of the Homesite property to Wife by directly transferring this property to Wife and himself, as tenants in the entirety. Thus, while the district court awarded Husband the remaining Homesite property (the Homesite property less the 3.06 acres of the Homesite gifted by the couple to the Partnership on which to build a lodge), the district court ordered Husband to pay Wife $157,000, one-half of the remaining Homesite's recognized appraised value, for her one-half interest in that property.

appropriate division of property. In *McCulloh,* we made it clear that property inherited by one party *can* be awarded to the party by whom it was inherited or given. *McCulloh,* at ¶ 15. But we did not hold that property inherited by one spouse must always be awarded to the spouse that received it. Before the *McCulloh* decision, we said no hard and fast rules govern property divisions. We continue to adhere to that principle. We have never established bright line rules for the disposition of a gift or inheritance, and we do not do so now. Instead, we review whether the trial court considered the appropriate factors in making the disposition.

*Breitenstine,* at ¶ 9 (emphasis in original; some citations omitted). This court thereafter recognized that the trial court properly considered the respective merits of the parties in making its property division award, including husband's inability to provide a proper accounting of his assets, wife's substantial contributions towards the increased value of the marital assets, the conditions of the parties after the divorce and *the intent of the parties with respect to the inherited property. Id.,* at ¶¶ 11–13.

[¶ 29] Wife also argues that the district court failed to recognize her financial contributions to the Canyon Ranch and her numerous non-economic contributions to the marriage. In tandem with this argument, she proffers that the separately owned property became so commingled with the marital estate that it lost its premarital identity and that her contributions must be considered to have increased the value of the Canyon Ranch. As indicated previously, evidence presented by Mr. Hoffman indicated that Wife had made only $6,054.62 in net contributions toward the Canyon Ranch. Further, the record establishes an ability to trace the origin of a large majority of contributions made toward the Canyon Ranch to Husband.

[¶ 30] Wife claims that Husband's employment salary with the United States Senate prior to 1994, ranging from $89,500 to $133,000, was insufficient to meet their ex-

penses, requiring her to make financial contributions approximating $1,260,881.84. She therefore claims that she shouldered all of the responsibility for the parties' household expenses, day-to-day living expenses, and debt during the entire marriage.

[¶ 31] Initially, it should be noted that, through her statement, Wife admits she was not solely responsible for marital expenses and debts of the marriage from 1994 forward. In fact, Wife received no salary from either of her businesses, Corporate Travel Services, Inc. and Corporate Consulting International, Inc. from 1984 to 1986 and after 1995, and neither of these companies made a profit after 1993.[5] Furthermore, evidence was presented that prior to 1994 Husband made substantial additional monies above and beyond his employment salary. Such income included dividends, interest, honoraria, and other sources. Husband's yearly incomes were as follow:

- 1988 $215,859 (including a Canyon Ranch loss of $43,983)
- 1989 $134,566 (including a Canyon Ranch loss of $87,807)
- 1990 $102,180 (including a Canyon Ranch loss of $101,268)
- 1991 $1,007,093 (including a Canyon Ranch loss of $5,953)
- 1992 $137,283 (including a Canyon Ranch loss of $40,388)
- 1993 $84,211 (including a Canyon Ranch loss of $83,859)
- 1994 $92,207 (including a Canyon Ranch loss of $80,253)

After 1994, Husband's income increased dramatically. These monies were used, in part, to make significant payments to Wife's business indebtedness and contribute to household expenses. Husband's annuity was utilized to pay off a $215,000 debt owed by Wife's company. Additionally, Husband made tax payments for Wife during the marriage and incurred detrimental tax consequences as a result of Wife. Although Wife made some tax payment contributions, these were offset. Finally, a large portion of the

---

5. Wife did not file a personal tax return in 1999, 2000 or 2001. The last year she filed a tax return for CTS was 1997 and for CCI 1993.

amounts claimed by Wife as marital contributions were shown to be in actuality unrelated to the marriage. Therefore, Wife's economic contribution and commingling argument is not supported by the record.

[¶ 32] Wife generally argues that her non-economic contributions must be considered by the district court to have increased the value of the Canyon Ranch. However, Wife fails to particularly enumerate any of her non-economic contributions or how they actually increased the value of the ranch. Rather, Wife identifies these contributions in very broad terms. Viewing the evidence in the light most favorable to Husband and giving him the benefit of all reasonable inferences, as we are required to do under the applicable standard of review, we conclude that the district court did not abuse its discretion when it awarded the Canyon Ranch to Husband.

### B. Chevy Chase Visa Credit Card Debt

■ [¶ 33] Wife disputes the district court's allocation of the Chevy Chase Visa Credit Card debt to her, claiming the district court provided only summarily in its findings of fact that "[W]ife has/had a Chevy Chase Bank Visa Credit Card Account." Wife also asserts that the district court relied solely on Exhibit 932 in justifying this award, however that exhibit was never admitted into evidence. Though Wife is correct that Exhibit 932 was never admitted into evidence, Wife submitted Exhibit DD, which admitted that she had paid this credit card previously using a personal line of credit. Husband furthermore testified that this account was Wife's personal account. We cannot say the district court acted unreasonably when it recognized Wife's payment of this account with personal funds. We, therefore, do not detect an abuse of the district court's discretion in awarding this debt to Wife.

### C. General Overall Property Award

[¶ 34] Wife argues the district court abused its discretion when it failed to consider her contributions to the marriage, the commingling of property, the merits of the parties, and the condition in which the parties would be left after the divorce. Wife asserts that in the overall marital property division, the district court awarded Husband $6,093,566.74 of the marital estate and Wife $556,748.58 of debt, yet Wife does not provide any substantiated basis for these figures.

[¶ 35] Wife, in making her calculations, counts the award of the Canyon Ranch to Husband. As indicated above, under the circumstances, we cannot conclude that the district court erred when it awarded the Canyon Ranch to Husband. Wife also incorrectly utilizes the award to Husband of the Partnership and the Canyon Ranch, LLC to reach her figures, thereby counting the Canyon Ranch twice. Removing these items from Wife's arithmetic substantially narrows the margin. Wife further complains that she remains responsible for the Hong Kong and Shanghai Banking Corporation line of credit. However, the record disclosed that this line of credit was taken out by Wife as a personal debt without Husband's knowledge and that Wife utilized this line of credit for largely non-marital matters.

[¶ 36] The justness and fairness of a marital property division cannot be gauged with a simple comparison of the amount of property awarded to each party. Rather, the disposition should be performed with regard to the respective merits of the parties, the condition in which they will be left by the divorce, the party through whom the property was acquired, and the burdens imposed upon the property for the benefit of either party and children.

[¶ 37] The record discloses that the district court took painstaking efforts to explain and justify its property division. This analysis included the Canyon Ranch, the Partnership, Canyon Ranch, LLC, the Virginia home, Hubbell, Inc. deferred compensation, El Paso Energy deferred compensation and stock options, Husband's government retirement account, Husband's and Wife's businesses and business-related debt, various other stocks and interest holdings, trusts, insurance policies, vehicles, personal properties, judgments, credit card indebtedness, as well as other issues. The reasoning utilized included the party through whom the property or indebtedness was acquired and when it

was acquired. Contrary to Wife's assertions, the district court also made specific findings, all supported by the record, concerning the parties' contributions to the Canyon Ranch, the Partnership, and the marital estate. For those reasons, we are not persuaded by Wife's arguments.

[¶ 38] Wife additionally maintains that the district court failed to consider the respective merits of the parties. She asserts primarily that the district court did not consider that Husband had extra-marital relations during the marriage. However, the district court allowed evidence to be presented on these issues, while at the same time noting that such evidence may not be used to penalize any party. *See Hall v. Hall*, at ¶¶ 13–14 (citing *Carlton v. Carlton*, at 1034).

[¶ 39] In a similar argument, Wife argues that the district court erred when it did not consider the condition in which the parties would be left by the divorce. The district court, however, recognized the respective ages of the parties and that they were in equally good health and both able bodied enabling them to provide for themselves. The district court further found that Husband would soon face mandatory retirement from certain boards of directors with little probability for extension. The district court further extensively reviewed the parties' financial situations both during the marriage and after their separation.

[¶ 40] Again, decisions regarding the division of marital property are within the trial court's sound discretion, and we will not disturb them on appeal unless there is a clear showing of an abuse of discretion. In this instance, we conclude that the district court properly assessed the facts and considered each of the required factors in making its determination. Therefore, we hold there is no clear showing of an abuse of discretion.

**Attorney Fees**

[10–12] [¶ 41] Wife argues the district court abused its discretion when it awarded her only $10,000 in attorney fees. In particular, Wife asserts the district court erred when it made no findings of fact concerning attorney fees and merely awarded her that sum. An award of attorney fees in a divorce case is part of the property division and thus subject to the same clear abuse of discretion standard of review. *McCulloh v. Drake*, at ¶ 18 (citing *Carlson v. Carlson*, 888 P.2d 210, 216 (Wyo.1995)); *Scherer v. Scherer*, 931 P.2d 251, 254 (Wyo.1997). Where the totality of the property distribution is equitable, no abuse of discretion occurs. *Id.*

[¶ 42] Upon review of the record, we again do not recognize that the district court acted in an arbitrary and capricious manner in making its overall property distribution, including its award of attorney fees. In *McCulloh v. Drake*, at ¶ 19, we stated:

It is rare when a marriage dissolves for either party to be satisfied with the trial court's final decision. It is for this reason that trial courts impress upon the parties the benefits to coming to a mutual decision between themselves rather than leaving the property division decisions to the trial court. The parties in this case did not follow this advice, and neither is completely happy with the disposition. The wife, however, has failed to demonstrate that the trial court abused its discretion. Consequently, we decline to alter the final property distribution with regard to the property division order or with regard to the assessment of fees and costs.

**Adequacy of Findings**

[¶ 43] Wife again in a very summary fashion claims that the district court acted in an arbitrary and capricious manner when it failed to make adequate findings with respect to marital assets. In particular, Wife contends that the district court failed to make findings concerning Husband's Arlington, Virginia apartment and his various holdings in oil and gas leases and Community Media stock. She also asserts that the district court did not properly address the United Bancorp "phantom" stock, Eaglestone Capital interest, Clean Fuels Technology securities, and Western Strategy Group joint venture interest. Hence, Wife concludes that this court should vacate the district court's property distribution in its entirety, although she provides no authority to support this conclusion.

[¶ 44] · The record, however, reflects that the district court did address many of the above issues. The district court awarded Husband all of the "phantom" stock of United Bancorp, the Eaglestone Capital interests, the Clean Fuels Technology securities, and Western Strategy Group joint venture interest. The record discloses that Husband had no common stock but only 1,000 units of non-transferable "phantom" stock in United Bancorp potentially valued at $1,000 and that Husband had a minority interest in Eaglestone Capital, a business that is not actively doing business and has no assets. Husband was granted options in Clean Fuels Technology, a non-publicly traded entity on August 10, 2000, after the couple's separation. These options vest in one-third increments each year beginning on August 10; 2001. Western Strategy Group was established as a joint venture that Husband has with two other persons. This venture provides consulting services under contract, but had no contracts, only minimal cash in the bank, has limited resale value, and posted a loss for the year 2000. Based on these established facts, we do not discern the district court abused its discretion in awarding these interests to Husband.

[¶ 45] Furthermore, the parties were allowed to present proposed findings of fact and conclusions of law to the district court for consideration. A letter from Wife's counsel, dated June 24, 2002, was sent to the district court acknowledging receipt of the district court's decision letter and advising the district court that Wife would be supplementing the decision letter as requested with respect to the matters not addressed by the court. However, Wife never provided any supplementation concerning the · remaining subjects of which she now complains.

[¶ 46] Wife, however, did file a variety of other objections and motions concerning the proposed order submitted to the district court by Husband after the district court issued its decision letter. Wife also submitted her own proposed Judgment and Decree of Divorce. Upon review of Wife's pleadings, it is once again apparent that she failed to address those areas about which she now complains. Wife also failed in any other manner to bring these matters to the district court for consideration.

▆▆▆ [¶ 47] This court has long held that issues not brought before the district court may not be reviewed on appeal. "We 'strongly adhere to the rule forbidding us to "consider for the first time on appeal issues that were neither raised in, nor argued to, the trial court," except for those issues which are jurisdictional or are fundamental in nature.' " *Donaghy v. Board of Adjustment,* 2002 WY 150, ¶ 11, 55 P.3d 707, ¶ 11 (Wyo. 2002) (quoting *Bredthauer v. TSP,* 864 P.2d 442, 446 (Wyo.1993) and *Oatts v. Jorgenson,* 821 P.2d 108, 111 (Wyo.1991)). We will not abrogate this rule now. Additionally, Wife sets forth no authority to support those arguments and her broad conclusion that this court must vacate the district court's property distribution.

### Lifetime Annuity/Survivor Benefit

▆▆▆ [¶ 48] Husband on cross-appeal contends that the district court made a mathematical error when it awarded Wife twenty nine percent of his lifetime annuity and survivorship benefit. Paragraph AA(1)(d) of the Judgment and Decree of Divorce dealing with Husband's United States government annuity provides:

> d. French Wallop should be awarded, and her counsel should prepare a QDRO, reflecting her share of this retirement account to be 29%. (Calculated:½ of the months during the time frame 6/1/84 to 12/31/94 [139/2] over total months = 69.5/240). The QDRO must conform with the U.S. Office of Personnel Management's regulations under Section 838.

[¶ 49] Husband's argument is relatively simple concerning the district court's calculations, contending that the district court improperly calculated the number of months from June 1, 1984, to December 31, 1994, to be 139 months, when in fact it is 127 months. Hence, Husband asserts that by utilizing the months in the calculation of Wife's interest, the district court arrived at a twenty-nine percent interest when it should have been twenty-six and a half percent interest. We agree. Indeed, Wife concedes that these calculations were in error. Nonetheless, we

need not reverse the district court in order to correct these errors.

[¶ 50] As stated in *Hurlbut v. Scarbrough*, 957 P.2d 839, 843 (Wyo.1998):

In *O's Gold Seed Company v. United Agri–Products Financial Services, Inc.*, 761 P.2d 673, 677 (Wyo.1988), we quoted from our earlier decision in *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees, School District No. 25, Fremont County*, 681 P.2d 1326, 1333 (Wyo.1984): " '[W]here the judgment does not result from passion or prejudice and any error may be ascertained by mathematical calculations, the supreme court may modify without reversing.' " Accordingly, we remand, without reversing, the district court's judgment in this case, directing the district court to modify its award so that it reflects the ten percent per year interest rate and to calculate the interest on each obligation from the time that the obligation became a judgment by operation of law.

*See also Adel v. Parkhurst*, 681 P.2d 886, 890 (Wyo.1984). Accordingly, we order that Paragraph AA.1.d. of the Judgment and Decree of Divorce entered by the district court dealing with Husband's United States government annuity be modified to reflect the proper percentage as set forth above.

[¶ 51] In a second argument, Husband asserts that the district court failed to comply with the management rules and regulations of the United States Office of Personnel by not clearly delineating what portions of the lifetime annuity and the survivor benefit were to be set over to Wife. Husband asserts that Wife, by submitting a proposed Qualified Domestic Retirement Order (QDRO), has overreached the district court's order by attempting to obtain additional survivor benefits. Husband also contends that the district court improperly ordered that a QDRO be drafted when a QDRO is not applicable in instances involving retirement funds held within the Civil Service Retirement System (CSRS), which is the case here.

[¶ 52] In addressing the latter contention, it is clear that the Employee Retirement Income Security Act (ERISA) does not govern retirement benefits held within the CSRS. As explained within *"A Handbook for Attorneys On Court-ordered Retirement"* published by the United States Office of Personnel Management (OPM) at RI 83–116, Rev. July 1997 (Handbook):

A substantial number of State court orders are drafted under the mistaken belief that the Employee Retirement Income Security Act (ERISA) (29 U.S.C. [§]1001 et seq.) applies to CSRS or FERS [Federal Employees Retirement System] benefits. Sections 1003(b)(1) and 1051 of title 29, United States Code, exempt CSRS and FERS from ERISA.

Handbook, at p. 5. CSRS and FERS are "governmental plans" as defined in section 1001(23) of title 29, United States Code. Therefore, because the term QDRO is an ERISA-created term used to summarize the division of retirement benefits under ERISA plans, QDROs are not acceptable to affect CSRS benefits unless the correct terminology is used. As set forth in the Handbook, at p. 5:

Since CSRS and FERS are exempt from ERISA, some provisions that ERISA plans must honor do not apply to CSRS and FERS. For OPM to be able to process court orders in the way intended by the parties, OPM and the court must be speaking the same language. To assure that the court has used our terminology, rather than ERISA's terminology, an order labeled as a QDRO is not acceptable. *However, this prohibition against labeling the order as a QDRO does not apply if court orders expressly state that they are written in conformity with OPM's regulations. This exception will guarantee that the purpose of the ban—that the court understands that we are exempt from ERISA and that the court is using the terminology as provided in the regulations—is satisfied by requiring that any QDRO mention the regulations.*

(Emphasis added.) In the same vein, both 5 C.F.R. § 838.302 (dealing with annuity benefits) and 5 C.F.R. § 838.803 (dealing with survivor benefits) also provide that a QDRO may be utilized when retirement benefits held within a CSRS are at issue, as long as the court order refers to part 838 of Title 5,

Code of Federal Regulations, and specifies that the provisions of the QDRO must be drafted in accordance with the terminology required by that part.

[¶ 53] In the portion of the district court's Judgment and Decree of Divorce dealing with Husband's United States government annuity, the district court found that Wife should be awarded a percentage of that annuity and then specified that "[t]he provisions of this order concerning [Husband's] CSRS or FERS benefits are governed by § 838.302 of the Retirement Regulations." The district court later ordered that Wife's counsel prepare a QDRO, reflecting her share of Husband's retirement account and that: "The QDRO must conform with the U.S. [OPM]'s regulations under Section 838." Accordingly, we hold that while the district court did order that Wife's counsel prepare a QDRO, it appropriately specified that any such QDRO be drafted within OPM's rules and regulations as required.

■■■■ [¶ 54] Lastly, Husband asserts that the district court was not specific enough when it made its order concerning his annuity because the district court did not specify the exact percentages to be awarded to Wife with respect to the employee annuity and the survivorship benefits as required by the OPM. In a related argument, Husband asserts that because survivor benefits are always a percentage of the lifetime annuity, Wife is guilty of overreaching when her attorneys prepared a proposed order specifying that she also receive twenty-nine percent of the survivor benefit of Husband.

[¶ 55] As stated previously, the district court ordered that Wife should be awarded twenty-nine percent of Husband's retirement account. However, due to a mathematical error, this percentage should have been correctly stated at twenty-six and a half percent. Subsequently, Wife's counsel prepared a proposed order that provided that the amount of Wife's survivor benefit would be equal to twenty-nine percent (corrected to twenty-six and a half percent) of Husband's employee annuity, to which Husband objected. In response to such objections, the district court handwrote a note to counsel specifying that Wife "is entitled to 29% [corrected to 26.5%]

of the account—period. The Court was not aware that survivor annuities are akin to a separate account."

[¶ 56] 5 C.F.R. § 838.301 et seq., as well as the Handbook, at pp. 5–6, require that the court order specify which retirement benefit is being awarded and in what amount. Clearly, such a mandate is necessary so that the OPM can be assured that it is making the correct distribution as awarded by a court. Unfortunately, upon our review of the record, we cannot discern the exact intent of the district court concerning the retirement account, and an ambiguity with respect to this issue remains. Therefore, we can only speculate that the OPM may face similar difficulties in carrying out the district court's directives. We, therefore, remand this issue to the district court for clarification so that the district court can specify, with particularity, the percentages to be awarded to Wife out of Husband's retirement account, whether it be through his employee annuity or survivorship benefits.

### CONCLUSION

[¶ 57] Given the reasons set forth above, the judgment of the district court is affirmed in part, modified in part, and reversed and remanded for clarification in part, consistent with this opinion.