2006 WY 93

**Richard Lee WYLAND, Appellant (Defendant),**

v.

**Cheryl Lynn WYLAND, n/k/a Cheryl Lynn Dunigan, Appellee (Plaintiff).**

**No. 05–184.**

Supreme Court of Wyoming.

July 28, 2006.

---

Representing Appellant: Ronald G. Pretty of Cheyenne, Wyoming.

Representing Appellee: Donald A. Cole of Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] Richard Wyland (Husband) and Cheryl Wyland (Wife) were divorced in 1999. In the divorce decree, the district court awarded Wife a portion of Husband's military retirement benefits in dividing the parties' marital property. The district court later entered an amended qualified domestic relations order (QDRO) relative to these retirement benefits. Husband appeals from that order, claiming that the order improperly modified the divorce decree. We affirm.

## ISSUE

[¶ 2] The dispositive issue in this appeal is whether the district court erred by entering the Second Amended Qualified Domestic Relations Order.

## FACTS

[¶ 3] The parties were married in 1983, and were divorced in 1999. The divorce

* Chief Justice at time of expedited conference.

decree[1] provided that Wife was to receive "as her sole, separate and absolute property . . . one half of that portion of her husband's military retirement earned during the marriage, if entitled to such share and only should such military retirement be vested and paid to husband and only paid on a monthly basis as the Husband receives the same or in a proportionate present value amount should the husband opt for a lump sum payment from the military . . ." and Husband was to receive "as his sole, separate and absolute property . . . his military retirement, less the portion to which wife may be entitled. . . ."

[¶ 4] In July 1999, Wife asked that the district court enter a QDRO "to implement the terms of" these provisions. The district court filed an order styled as such on August 9, 1999. Shortly thereafter, Wife asked the district court to enter an amended order to correct Husband's social security number. The district court filed an Amended Qualified Domestic Relations Order on August 17, 1999 that included the correction. It does not appear that Husband objected to, or appealed from, either of these orders.

[¶ 5] In January 2004, Wife petitioned the district court to "clarify" the amended QDRO because "the United States Air Force does not recognize the language in the Order and [Wife] has not been receiving her portion" of Husband's military retirement.[2] She separately asked the district court to hold Husband in contempt because he had retired and thereafter "refused" to pay Wife any of the retirement benefits she was entitled to receive pursuant to the divorce decree. Husband opposed both of these requests, which requests, as well as Husband's motion to modify custody as to the parties' oldest child, were referred to a circuit court judge for disposition.

[¶ 6] In July 2004, the circuit court judge held Husband in contempt for not paying Wife her portion of Husband's military retirement benefits (though he did not order

any particular sanction), denied Husband's motion to dismiss Wife's petition to clarify the amended QDRO, and agreed to modify custody as to the parties' oldest child. The judge ultimately entered what was styled a Second Amended Qualified Domestic Relations Order on June 13, 2005. It appears that the only difference between this order and the first amended order is the following paragraph:

The former spouse/Alternate payee is awarded a percentage of the Participant's disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is 185 months of marriage during the Participant's creditable military service, divided by the Participant's total number of months of creditable military service.

Husband now appeals from the Second Amended Qualified Domestic Relations Order.

## DISCUSSION

[¶ 7] On appeal, Husband argues that the district court "had no authority to enter a QDRO with which to effectuate the parties['] agreement as to the payment of the retirement funds." He contends that the district court did not specify in the divorce decree that it would retain "the continuing jurisdiction to enter a valid QDRO," and that the district court did not have the authority to modify its division of the marital property "in order to make it easier for [Wife] to collect her retirement benefits."

[¶ 8] The district court provided, in dividing the parties' marital property, that Wife was to receive a portion of Husband's military retirement benefits under certain circumstances. Indeed, " 'retirement funds, whether vested, nonvested, or not matured, are marital property divisible upon divorce.' " *Johnson v. Johnson,* 851 P.2d 4, 7 (Wyo. 1993) (quoting *Broadhead v. Broadhead,* 737 P.2d 731, 734 (Wyo.1987)). Husband is gen-

---

1. The Stipulated Decree of Divorce, filed in January 1999, incorporated the terms of a Property Settlement and Child Custody Agreement the parties filed in November 1998.

2. Based on our review of the record in the instant case, we will treat this as a motion to clarify the divorce decree pursuant to W.R.C.P. 60(a). *See Glover v. Crayk,* 2005 WY 143, ¶¶ 6–8, 122 P.3d 955, 957 (Wyo.2005).

erally correct that once the district court entered a judgment to that effect, it did not then retain the jurisdiction to modify its marital property division "based upon [a] change of circumstances." *Harshfield v. Harshfield,* 842 P.2d 535, 538 (Wyo.1992). However, W.R.C.P. 60(a) provides, in pertinent part, as follows:

> (a) *Clerical mistakes.*—Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

We consider two factors in reviewing the application of this rule: (1) whether the clarification of a judgment relates to a "clerical mistake"; and if so, (2) whether the order at issue "clarified or modified the original judgment." *Glover v. Crayk,* 2005 WY 143, ¶ 9, 122 P.3d 955, 958 (Wyo.2005). Both "are questions of law, which we review *de novo.*" *Id.*

[¶ 9] We have said the following regarding the first factor:

> W.R.C.P. 60(a) is intended to correct clerical, not judicial, errors. A clerical error is a mistake or omission of a mechanical nature apparent on the face of the record

that prevents the judgment as entered from accurately reflecting the judgment that was rendered. In addition, W.R.C.P. 60(a) is designed to clarify, as well as to correct, and is properly invoked to dispel either patent or latent ambiguities in a judgment.

*Elsasser v. Elsasser,* 989 P.2d 106, 108 (Wyo. 1999) (internal citations omitted). In other words, a district court retains the authority, pursuant to Rule 60(a), "to clarify an ambiguous property settlement provision provided in the original decree in order to effectuate the provision." *Glover,* ¶ 7, 122 P.3d at 957; *see also Elsasser,* 989 P.2d at 109 (involving a divorce decree that was insufficient to meet federal statutory requirements for a QDRO and stating that the divorce decree could be clarified "by the addition of" a QDRO pursuant to Rule 60(a)).

[¶ 10] Wife clearly sought to clarify and effectuate the divorce decree provision regarding Husband's military retirement benefits so that it met the statutory requirements of the Uniformed Services Former Spouses Protection Act (USFSPA), 10 U.S.C. § 1408 (2006).[3] Subsection (d) of that statute provides, in pertinent part, as follows:

> (1) After effective service on the Secretary concerned of a court order [4] ... with

---

3. Husband claims that we made it clear, "by implication," in *Wallop v. Wallop,* 2004 WY 46, ¶¶ 51–53, 88 P.3d 1022, 1035–36 (Wyo.2004), that a "QDRO can only be given if the proper [f]ederal [s]tatute was implicated." In *Wallop,* ¶¶ 48, 51–52, 88 P.3d at 1034–35, the district court awarded the wife a portion of the husband's federal civil service retirement benefits and ordered that a QDRO should be prepared in accordance with the applicable federal regulations. On appeal, the husband argued that a QDRO was not applicable to civil service retirement benefits. *Id.,* ¶ 51, 88 P.3d at 1035. We noted that the term "QDRO" is "an ERISA-created term" (referring to 29 U.S.C. § 1001 et seq.), that ERISA did not apply to federal civil service retirement benefits, and that "QDROs are not acceptable to affect CSRS benefits unless the correct terminology is used." *Id.,* ¶ 52, 88 P.3d at 1035. We concluded that the applicable rules nevertheless allowed an order to be labeled as a QDRO if the order expressly stated that it was written in conformity with the applicable substantive non-ERISA regulations. *Id.,* ¶ 52, 88 P.3d at 1035–36. The divorce decree in *Wallop* provided that it should be governed by the applicable non-ERISA federal statutes and regulations

and we held that "while the district court did order that Wife's counsel prepare a QDRO, it appropriately specified that any such QDRO be drafted within OPM's rules and regulations as required." *Id.,* ¶ 53, 88 P.3d at 1036.

In the instant case, while the order at issue was labeled a QDRO, the order specifically stated that it "intended to qualify under the Uniformed Services Former Spouses Protection Act, 10 U.S.C. 1408 et seq., with all provisions to be interpreted to make the Decree qualify." Husband does not offer any cogent argument regarding how this statement, and the other language contained in the second amended QDRO, failed to implicate the proper federal statute.

4. 10 U.S.C. § 1408(a)(2) provides, in pertinent part, as follows:

> (2) The term "court order" means a final decree of divorce ... issued by a court ... which—
> (A) is issued in accordance with the laws of the jurisdiction of that court;
> (B) provides for—
> ...
> (iii) division of property ...; and

respect to a division of property, specifically providing for the payment of an amount of the disposable retired pay from a member to the . . . former spouse of the member, the Secretary shall make payments . . . from the disposable retired pay of the member to the . . . former spouse . . . with respect to a division of property, in the amount of disposable retired pay specifically provided for in the court order.

*See also Kelly v. Kelly,* 2003 WY 133, ¶¶ 6–8 and Appendix I, 78 P.3d 220, 222–31 (Wyo. 2003).

[¶ 11] The United States Air Force was apparently unable to divide Husband's retirement benefits pursuant to the divorce decree without further guidance. Juxtaposition of the divorce decree, the first amended QDRO, and the second amended QDRO reveals that the divorce decree was ambiguous as to precisely how Wife's share of such benefits was to be calculated and required a formula, as well as some additional language and personal information, in order to effectuate the division of benefits. The divorce decree "obviously needed to be clarified" in that regard, and we have held that such a clarification related to a "clerical mistake" for purposes of Rule 60(a). *Glover,* ¶¶ 7, 10–11, 122 P.3d at 957–58. *See generally also Wallop v. Wallop,* 2004 WY 46, ¶¶ 54–56, 88 P.3d 1022, 1036

(Wyo.2004); *Kelly,* ¶¶ 6–10, 78 P.3d at 222–24; and *Elsasser,* 989 P.2d at 108–09.

[¶ 12] We also fail to see how the second amended QDRO modified, rather than clarified, the divorce decree in the instant case. The divorce decree essentially provided that Wife was to receive her portion of Husband's retirement benefits as such benefits became payable to Husband.[5] Based on our review of the record, the only meaningful substantive difference between the divorce decree and the second amended QDRO is the formula used to calculate Wife's share of Husband's benefits. Husband does not claim on appeal that this formula is contrary to, or inconsistent with, the divorce decree. It remains unclear from Husband's argument how any of the other language or information contained in the second amended QDRO (presumably included to meet the requirements of the USFSPA) otherwise modified the divorce decree. Accordingly, we cannot say that the circuit court judge erred in entering the second amended QDRO.

[¶ 13] Affirmed.

---

(C) in the case of a division of property, specifically provides for the payment of an amount, expressed in dollars or as a percentage of disposable retired pay, from the disposable retired pay of a member to the spouse or former spouse of that member.

5. In his appellate brief, Husband states that the divorce decree "required" Wife to rely on Husband to forward Wife her portion of the retirement benefits. However, the divorce decree provides that Wife's share of such benefits is to be paid to Wife "on a monthly basis as [Husband] receives the same or in a proportionate present value amount should [Husband] opt for a lump sum payment from the military." This provision certainly does not "require" Wife to receive her share of the benefits from Husband any more than it precludes her from receiving her share of the benefits directly from the military (to the extent permitted by the USFSPA). Indeed, in some cases, a former spouse must rely on both methods to receive the retirement benefits to which he or she is entitled. *See Forney v. Minard,* 849 P.2d 724 (Wyo.1993). Husband has not demonstrated that the second amended QDRO is contrary to, or inconsistent with, the divorce decree in this respect.