2005 WY 88

**Kimberly D. LOPEZ, Appellant (Defendant),**

v.

**Orlando V. LOPEZ, Appellee (Plaintiff).**

No. 04–232.

Supreme Court of Wyoming.

Aug. 8, 2005.

Representing Appellant: Sean W. Scoggin of Tiedeken & Scoggin, P.C., Cheyenne, Wyoming.

Representing Appellee: Tony S. Lopez, Laramie, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Ms. Lopez (Mother) challenges the decree of divorce entered by the district court. She claims that the district court abused its discretion when it awarded Mr. Lopez (Father) primary custody of the parties' two children. We affirm.

### ISSUE

[¶ 2] The parties present only one issue for resolution:

1. Did the district court abuse its discretion when it awarded Father primary custody of the children?

### FACTS

[¶ 3] Mother and Father were married June 12, 1993. They have two children, an 11 year-old daughter and a 5 year-old son. Father initiated the divorce action. Mother counterclaimed. Both parties sought primary custody of the children. After trial, the district court issued a decision letter awarding primary custody of the children to Father. A decree of divorce in conformity with the decision letter was entered on September 28, 2004. This appeal followed. We will set forth additional facts as necessary in our discussion.

### STANDARD OF REVIEW

[¶ 4] Our standard of review regarding custody issues is well-established:

Custody matters are committed to the sound discretion of the trial court. The welfare and needs of the children are to be given paramount importance. We will not overturn the decision of the trial court

unless we are convinced that it constitutes an abuse of discretion or violates some legal principle. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria. It means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. Our review includes an evaluation of the evidence to support the trial court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. We cannot sustain findings of fact that are not supported by the evidence, contrary to the evidence, or against the great weight of the evidence. An abuse of discretion is present when a material factor deserving significant weight is ignored.... Every case requires careful weighing of relevant factors, looking to the unique and individual family relationships, in order to reach a resolution that is in the best interests of the children. To determine whether a district court has abused its discretion, we must rely upon the district court's articulation of the factors that were considered and how those factors support its conclusions.

*Donnelly v. Donnelly*, 2004 WY 72, ¶ 19, 92 P.3d 298, ¶ 19 (Wyo.2004).

### *DISCUSSION*

██ [¶ 5] Mother contends that the district court abused its discretion in awarding custody to Father. She claims that the evidence at trial established that she was the primary caretaker and financial provider. She contends that she is in the best position to provide the children with a stable home environment to which the children are accustomed. She argues that she is the parent who can best fulfill the obligations and responsibilities of the custodial parent. Mother also asserts that the custody award impermissibly punished her because she allowed her boyfriend (Mr. Ortega) to move in with her and the children shortly after the parties separated.

[¶ 6] Father contends that the district court did not abuse its discretion. He asserts that the facts, as determined by the district court, support the custody decision. We agree with Father.

██ [¶ 7] We begin our analysis with reference to the record presented for our review. The record is sparse. It consists only of the pleadings filed by the parties, the court's decision letter and the decree of divorce. Mother is required to provide a sufficient record to this Court to allow proper evaluation of the custody decision. *Beeman v. Beeman*, 2005 WY 45, ¶ 10, 109 P.3d 548, ¶ 10 (Wyo.2005). Mother has failed to provide a transcript of the trial, and has not submitted a statement of the evidence pursuant to W.R.A.P. 3.03.[1] "When this Court does not have a properly authenticated transcript before it, it must accept the trial court's findings of fact upon which it bases any decisions regarding evidentiary issues." *Burt v. Burt*, 2002 WY 127, ¶ 7, 53 P.3d 101, ¶ 7 (Wyo.2002). "In the absence of anything to refute them, we will sustain the trial court's findings, and we assume that the evidence presented was sufficient to support those findings." *Beeman*, ¶ 10.

[¶ 8] In light of the limited record before us, the decision letter necessarily becomes the focus of our review. The letter is fourteen pages in length, much of which is devoted to the court's custody determination. The letter is detailed and thorough. It provides a cogent analysis and explanation of the decision reached by the district court.

[¶ 9] The district court identified the appropriate factors for consideration in its custody decision as required by Wyo. Stat. Ann.

---

1. W.R.A.P. 3.03 states:

 If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, appellant may prepare a statement of the evidence or proceedings from the best available means including appellant's recollection. The statement shall be served on appellee, who may serve objections or propose amendments within 15 days after service. The statement and any objections or proposed amendments shall be submitted to the trial court for settlement and approval and as settled and approved shall be included by the clerk of the trial court in the record on appeal.

§ 20–2–201(a) (LexisNexis 2003).[2] The court set forth in significant detail its factual findings and applied those findings to the appropriate legal considerations in reaching its custody determination.

[¶ 10] In its decision letter, the district court recounted evidence that favored both parties. The court found that both parents were fit and proper parents and that both were willing to accept the responsibility of parenting. The court noted that both parents "... love their children and both are capable of providing for their basic needs." The court recognized that "... both parents have demonstrated a willingness to allow the other to provide care and this Court is not concerned about the parties' ability to facilitate visitation."

[¶ 11] The court identified several factors that supported Mother's position. It noted that Mother "... served as [daughter's] primary caretaker and, perhaps, even [son's], for a time." The court recognized that Mother was the primary income provider for the family and that she was "... dedicated to her company." The court commended Mother for her involvement in numerous social activities and community service groups. According to the court, Mother is a positive role model for the children.

[¶ 12] However, the court also identified several factors that undermined Mother's position. Mother's dedication to her business and her involvement with social activities and community service groups reduced her availability to her children. Despite her efforts, Mother's business is on shaky financial ground and faces a battle for survival. The court found that Mother "... is less able to parent given her hectic work demands."

[¶ 13] The court found that Mother is, at times, "... inconsiderate, demanding, and judgmental." Additionally, the evidence established that alcohol negatively impacted Mother's relationship with her children. According to the court, "... Ms. Lopez has demonstrated a pattern of putting alcohol ahead of her children; there were numerous incidents of Ms. Lopez being drunk and its impact on her children's lives."

[¶ 14] The court also discussed Mother's relationship with Mr. Ortega. It is this discussion that provides the foundation for Mother's contention that she was unfairly punished by the court. Mother correctly notes that we have previously stated that, "[t]he prime judicial objective in dealing with custody of minor children of divorced parents is to serve the best interest of the child—not to punish or reward one parent for real or supposed derelictions." *Curless v. Curless*, 708 P.2d 426, 430 (Wyo.1985). However, we do not find any support in the decision letter for Mother's claim of punishment.

[¶ 15] Mother met Mr. Ortega in June, 2003. He moved in with Mother and the children in August, 2003. In its discussion regarding custody, the court commented

---

2. Wyo. Stat. Ann. § 20–2–201(a) provides:

(a) In granting a divorce, separation or annulment of a marriage or upon the establishment of paternity pursuant to W.S. 14–2–401 through 14–2–907, the court may make by decree or order any disposition of the children that appears most expedient and in the best interests of the children. In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:

(i) The quality of the relationship each child has with each parent;

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

upon the impact on the children of Mother's decision to allow Mr. Ortega to move into her home:

> The Court is also concerned about Ms. Lopez's decision to move Mr. Ortega into her home. In modern times, concern about adults living together outside of wedlock is outdated; the Court does not worry itself with the fact that Ms. Lopez and Mr. Ortega choose to cohabitate, as did Mr. and Ms. Lopez before their marriage. However, Ms. Lopez apparently moved Mr. Ortega into her home a mere eight (8) weeks (or less) after meeting him. The Court is concerned about the impact this decision had on the children (who had recently gone through the upheaval of having their father move out) and Ms. Lopez's apparent lack of consideration of the impact of this decision on her children.

In light of the absence of an evidentiary record, we must assume that evidence was presented which supports the district court's findings.[3] The concerns expressed by the court relate to the welfare of the children and not punishment of Mother.

[¶ 16] The court also identified factors which it considered regarding Father. The court was impressed with Father's relationship with his children:

> In the most recent years, Mr. Lopez has assumed a more fundamental parental role. He is the parent that generally provides patience and nurturing for the children; he is the parent that "takes them places" and "does things with them." So, while both parents have a strong relationship with the children, Mr. Lopez is better able to attend to the children's emotional needs. This Court reiterates that both these parents are fit and competent; both are willing to accept the responsibilities of parenting. However, Ms. Lopez is less able to parent given her hectic work demands. Mr. Lopez is generally the parent with whom the children communicate and interact.

[¶ 17] The court's review of the evidence was not entirely favorable to Father. The court noted Father's intermittent employment history and lack of financial support for the family. The court expressed concern about Father's ability to financially provide for the children:

> Mr. Lopez has shown himself a less-than-reliable income provider. The Court has some concerns about this area of responsibility, which has been alleviated only by the fact that Ms. [sic] Lopez has completed his college degree; has remained employed, at least part time, over the past year; and appears fully cognizant of the fact that he may have to set his dreams aside in order to be sure he can financially support his children. This Court has not been impressed with Mr. Lopez's lack of financial support for his children—over the past several years, and since the filing of the complaint for divorce, in particular. That said, the Court recognizes that both parties have matured in financial matters and this factor essentially is a "wash" for each.

[¶ 18] Mother's contention that she should be awarded custody because she is in the best position to provide a stable home environment in which the children are accustomed, rests upon the reality that an award of custody to Father will require that the children relocate to California. This issue was addressed directly by the district court:

> The Court has carefully considered Ms. Lopez's argument that Cheyenne is the children's "home." True, the children are accustomed to their current house and neighborhood; [daughter] has friends at school and is involved in activities. However, she has friends and activities in California as well. Given the strength of the children's relationships with Mr. Lopez and this Court's belief that he can best meet their emotional and intellectual needs at this time, the Court concludes that a transition to a new home or school would not be burdensome or unwarranted; in fact, it may be welcomed. Further, the

---

**3.** The decision letter reflects that the district court, pursuant to stipulation of the parties, met with the daughter in chambers with counsel present. The court noted that it considered the daughter's input and opinion in reaching its decision. The daughter's testimony was not included in the record presented for our review.

children are well accustomed to their grandparent's home in California, where they will be residing with their father and grandparents. They already have friends and other relatives in the area; they already are involved in activities such as swimming and horseback riding. Thus, while Ms. Lopez, no doubt, wishes to strengthen her relationship with her children, the Court believes this can best be accomplished through visitation, with Mr. Lopez serving as the children's primary caretaker.

[¶ 19] The district court was faced with a difficult decision. The court weighed the evidence, applied the law and determined that primary custody should be awarded to Father. Mother has presented us with no claim of factual error, nor has she asserted any legal error, other than her claim of punishment. In essence, she urges us to reweigh the evidence and asks us to reach a different result than the trial court. We cannot do so.

[¶ 20] Even if we were inclined to agree with Mother's position, we cannot retry this case on appeal or substitute our judgment for that of the district court. *Drake v. McCulloh,* 2002 WY 50, ¶ 18, 43 P.3d 578, ¶ 18 (Wyo.2002); *Love v. Love,* 851 P.2d 1283, 1286 (Wyo.1993). To show an abuse of discretion, "[i]t is not enough for an appellant to summarize alleged errors and to give [her] views of the import of the evidence." *Beeman,* ¶ 10. "Deference must be given to the opportunity of the trial court to judge the credibility of the witnesses, and a reviewing court will not set aside the court's findings merely because it might have reached a different result." *Drake,* ¶ 18. We find no abuse of discretion and affirm the district court's custody determination.