# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 18

### OCTOBER TERM, A.D. 2019

### *February 12, 2020*

ANDREW P. JOHNSON,

**Appellant**
**(Defendant),**

**v.**                                                          S-19-0120

KATIE L. JOHNSON,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Uinta County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*
> Clark D. Stith of Stith Law Office, Rock Springs, Wyoming.

*Representing Appellee:*
> Farrah L. Spencer and Monica J. Vozakis of Long Reimer Winegar LLP, Evanston, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]   Andrew P. Johnson (Father) appeals from the district court's decree of divorce and order awarding custody and dividing property and debts between him and Katie L. Johnson (Mother).  Father argues the court abused its discretion when it restricted visitation with his four children to two hours of supervised visitation every other week until he addressed the court's concerns regarding his anger, when it divided the marital property, and when it found him voluntarily underemployed for declining to work overtime.  We conclude the court properly ordered supervised visitation and divided the marital property, but abused its discretion in calculating Father's child support amount.  We thus affirm in part and reverse in part.

## ISSUES

[¶2]   We rephrase and reorder Father's issues on appeal:

> I. Whether the district court abused its discretion in ordering supervised visitation.
>
> II. Whether the district court abused its discretion in dividing the marital property.
>
> III. Whether the district court abused its discretion when it imputed to Father income attributable to overtime earned before the preceding 24-month period when calculating child support.

## FACTS

[¶3]   Mother and Father married in December 2002.  In 2015, Father filed for divorce.  Mother, who was nine months pregnant with their fourth child at the time, obtained a protection order against Father and was awarded temporary custody of the children.  Mother and Father reconciled after their child's birth later that year and Father dismissed the action.

[¶4]   Two years later, Mother obtained a protection order against Father under the Domestic Violence Protection Act.  The circuit court found an act of domestic abuse occurred, granted Mother primary residential custody of the children, and awarded Father visitation every other weekend and every Tuesday evening.  Mother simultaneously filed for divorce.  After Father answered the complaint and counterclaimed, Mother moved "for a temporary order awarding child custody, suspended or supervised visitation, child support, and possession of [the] marital home" due to Father's history of domestic violence and his behavior during a recent visit with their oldest child.  The court granted the motion

1

in January 2018, awarding Father supervised visitation with the children every other Saturday for two hours, but reserving any decision on financial matters.

[¶5]   At the one-day bench trial in May 2018, the primary dispute concerned Father's visitation arrangement, the division of marital property, and the amount of child support Father would pay.  Mother presented testimony from herself, one of Father's supervisors regarding overtime available to Father, and a local Sheriff's Deputy regarding a death threat that Father made against Mother.  Father presented testimony from himself, several of his immediate family members regarding Father's relationship with Mother and the children, and a local real estate agent regarding attempts to sell the marital home and its condition.

[¶6]   With respect to supervised visitation, the precise issue revolved around Mother's fear of Father's temper and abuse.  Mother argued that Father's pattern of abuse made supervised visitation in the children's best interests until Father completed either an anger management or domestic violence course, as well as a parenting class.  Father disputed Mother's abuse allegations, arguing that he was "a fully capable, competent, loving parent" who never had issues with his children until the court ordered supervised visitation.

[¶7]   With respect to division of property, the primary issues were the court's disposition of the marital home and its evaluation of the respective merits of the parties under Wyo. Stat. Ann. § 20-2-114(a).  In her pretrial memo, Mother requested that the court order the sale of the marital home and award 60 percent of the proceeds to her, and 40 percent of the proceeds, along with his pension, to Father.  But at trial she argued it was in the children's best interests to remain in the marital home, so she should obtain the home after divorce. Father argued that granting the home to Mother would unfairly benefit her, and suggested that Mother could not perform the maintenance required on the home.  He further argued that the parties' best option would be for him to acquire and refinance the home, and pay Mother approximately one-half of the equity.

[¶8]   With respect to child support, the crux of the dispute was whether Father was voluntarily underemployed.  Mother argued that Father worked overtime "any time [it] was offered" throughout their marriage until 2015 when he filed for divorce, and that he stopped working overtime between 2015 and 2017 so that his child support payments would be lower.  She argued that the court should find Father voluntarily underemployed because he chose not to work overtime in 2016 and 2017, and base his child support on his income while "he was working overtime" in 2013 and 2014.  Father disagreed with Mother's characterization of his motive for not working overtime, arguing that he stopped working overtime after deciding that it "was not in the best interests of me nor was it good for my family relationships."

[¶9]   In its divorce decree, the court awarded Mother sole legal custody and primary physical custody of the children, and required Father's visits to be supervised unless and

2

until he successfully completed the conditions outlined in the court's order. The court disposed of various property, specifically awarding the marital home to Mother and requiring her to refinance the balance of the debt in her own name. It also found Father voluntarily underemployed and imputed to him potential overtime income, resulting in a $2,300 monthly child support payment instead of the presumptive amount of $1,870. Father timely appealed.

## STANDARD OF REVIEW

[¶10] We review the district court's divorce decree for any abuse of discretion.

> Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. *Scherer v. Scherer*, 931 P.2d 251, 253–54 (Wyo. 1997); *Triggs v. Triggs*, 920 P.2d 653, 657 (Wyo. 1996); *Basolo v. Basolo*, 907 P.2d 348, 352 (Wyo. 1995). . . . "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." *Fink [v. Fink]*, 685 P.2d [34, 36 (Wyo. 1984)].
>
> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Pinther v. Pinther*, 888 P.2d 1250, 1252 (Wyo. 1995) (quoting *Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo. 1993)). Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Triggs*, 920 P.2d at 657; *Cranston v. Cranston*, 879 P.2d 345, 351 (Wyo. 1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Jones v. Jones*, 858 P.2d 289, 291 (Wyo. 1993). Similarly, an abuse of discretion is present "'when a material factor deserving significant weight is ignored.'" *Triggs*, 920 P.2d at 657 (quoting *Vanasse v. Ramsay*, 847 P.2d 993, 996 (Wyo. 1993)).

*Jacobson v. Kidd*, 2018 WY 108, ¶ 14, 426 P.3d 813, 820 (Wyo. 2018) (quoting *Meehan-Greer v. Greer*, 2018 WY 39, ¶ 14, 415 P.3d 274, 278–79 (Wyo. 2018)).

3

## DISCUSSION

### I.  Supervised Visitation

[¶11]  Father forwards various arguments as to why the court abused its discretion when it imposed a graduated visitation schedule.  He argues that the court abused its discretion by not addressing his fundamental right to associate with his children under Wyo. Stat. Ann. § 14-2-206, that insufficient evidence supported the court's finding that he abused Mother and the children, and that it erred by conditioning his visitation rights on obtaining counseling for the children.  A thorough review of the court's order and record reveals no abuse of discretion.

[¶12]  The children's best interests are "paramount in any award of custody and visitation, and the trial court has a large measure of discretion in making that award." *Arnott v. Arnott*, 2012 WY 167, ¶ 31, 293 P.3d 440, 455 (Wyo. 2012) (quoting *Stonham v. Widiastuti*, 2003 WY 157, ¶ 17 n.8, 79 P.3d 1188, 1194 n.8 (Wyo. 2003)).  Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2019) outlines the non-exclusive list of factors the court must consider when determining the children's best interests:

> (i) The quality of the relationship each child has with each parent;
>
> (ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
>
> (iii) The relative competency and fitness of each parent;
>
> (iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
>
> (v) How the parents and each child can best maintain and strengthen a relationship with each other;
>
> (vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
>
> (vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other

parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

"No single factor is determinative," and "depending on the case, different factors will present a greater need for emphasis. The one constant is that the resolution must be in the [children's] best interests[.]" *Stevens v. Stevens*, 2014 WY 23, ¶ 26, 318 P.3d 802, 811 (Wyo. 2014). "Household abuse is always improper and contrary to the [children's] best interests[.]" *Gjertsen v. Haar*, 2015 WY 56, ¶ 39, 347 P.3d 1117, 1128 (Wyo. 2015).

[¶13] The court clearly analyzed each statutory factor and found that all but one—the geographic difference between the parties (which was neutral)—favored Mother. Its analysis formed the basis not only for its determination that Mother should have sole legal and primary physical custody of the children, but also that Father's visitation should be supervised.

- Factor (i) favored Mother because she was the primary caregiver, *See Martin v. Hart*, 2018 WY 123, ¶ 22, 429 P.3d 56, 64 (Wyo. 2018) ("While not determinative, primary caregiver status is a weighty factor that the district court must consider."), and Father seemed unwilling to place the children's interests before his own.

- Factor (ii) favored Mother because, although Father provided the financial resources for the family, Mother "was able to work outside the home for a limited time" while providing "hands-on care of the children and their day-to-day activities."

- Factor (iii) favored Mother because she "has assured the children's physical and mental health needs are met" and because "[c]ontinuing to expose the children to [Father's] unfettered conduct is not in their best interests. [Father's] control and violence make him an inappropriate role model for the children."

5

- Factor (iv) favored Mother because she "will comply with any court order concerning the children visiting and staying with their father" while Father would not.

- Factor (v) favored Mother because of Father's history of control and abuse of Mother and the children; consequently, "unsupervised visitation would be more detrimental to the children" than a graduated visitation schedule contingent on Father recognizing and addressing his history of abuse.

- Factor (vi) favored Mother because Father "fails to understand his actions and aggression are dangerous if left untreated" and Mother "is willing to communicate with [Father] about the children and" to comply with Father's court-ordered visitation.

- Factor (vii) "clearly" favored Mother because "she will not denigrate [Father] to the children nor will she prohibit them from having" court-ordered contact, and the court could not find the same of Father.

- Factor (viii) was neutral because the 85-mile distance between the parties' residences "will not impact visitation."

- Factor (ix) favored Mother because she "is more mentally able to care for the children" than Father.

- For factor (x), the court considered domestic violence and abuse, finding that Father abused Mother—often in the presence of the children—and that there was some undisputed and some refuted evidence "of [Father] abusing the children." Wyo. Stat. Ann. § 20-2-201(c) (where "family violence has occurred," the court must "make arrangements for visitation that best protects the children and the abused spouse from further harm"); *Buttle v. Buttle*, 2008 WY 135, ¶ 23, 196 P.3d 174, 180 (Wyo. 2008) (evidence of spousal abuse deserves serious weight because of "the negative effects this sort of violence can have on children"), *overruled on other grounds by Bruegman v. Bruegman*, 2018 WY 49, 417 P.3d 157 (Wyo. 2018).

6

[¶14]   From these findings, the court reasoned that supervised visitation would be in the children's best interests until Father adequately addressed his anger.   Specifically, it concluded that:

> this is a high conflict case with serious risks to [Mother] and the children.   The [c]ourt is imposing sole custody with [Mother] and supervised visitation upon [Father] to protect the children and their primary caregiver and to reduce the impact of that high conflict on the children.   Although it is painfully difficult for this [c]ourt to deny the children, especially [the two children closest emotionally to Father], the right to have unsupervised visits with their father, this [c]ourt finds it to be in the best interests of the children that visitation with [Father] continue to be supervised, as previously ordered.   To transition to unsupervised visits, [Father] must obtain an anger evaluation, provide the evaluator with a copy of this decision, and comply with the evaluator's recommendations.

> [Father] must begin regular sessions with a licensed counselor and must provide proof of compliance with the recommendations in an anger evaluation.   Additionally, [Father] shall be responsible for paying for the children to have mental health counseling to work toward reunification.

The court stated that it could not "emphasize strongly enough that the limitations upon [Father's] custody and visitation are the result of his acts of domestic violence and are not the fault of anyone else."

### A. Wyo. Stat. Ann. § 14-2-206

[¶15]   Father insists that the court erred by ignoring Wyo. Stat. Ann. § 14-2-206 when it imposed supervised visitation without first determining whether supervised visitation was "the least restrictive means to achieve the [children's] best interests[.]"   Wyo. Stat. Ann. § 14-2-206 (LexisNexis 2019) provides:

> (a) The liberty of a parent to the care, custody and control of their child is a fundamental right that resides first in the parent.

> (b) The state, or any agency or political subdivision of the state, shall not infringe the parental right as provided under this section without demonstrating that the interest of the government as applied to the parent or child is a compelling state interest addressed by the least restrictive means.

7

Though the statute does not mention courts, Father asserts that district courts are "an arm and agency of the state[,]" and thus are required to comply with subsection (b) when imposing custody and visitation schedules that infringe a parent's fundamental right as articulated in subsection (a). We disagree.

[¶16] Had the legislature intended courts to comply with § 14-2-206 when awarding visitation in divorce actions, it could and would have said so. But it did not. *See Hall v. Park Cty.*, 2010 WY 124, ¶ 12, 238 P.3d 580, 584 (Wyo. 2010). Instead, in Title 14, the legislature distinctly prescribes the court's role in, for example, the adjudication of parentage, neglect, and termination of parental rights actions—actions in which the Department of Family Services (the Department), on behalf of the State of Wyoming, either typically or may participate in accordance with subsection (b). *See e.g.*, Wyo. Stat. Ann. §§ 14-2-404 (LexisNexis 2019) (authorizing "[t]he district court" to adjudicate parentage), 14-3-411 (requiring the district attorney to file a neglect petition with "the court if he believes action is necessary"), 14-2-310 (permitting an authorized party to file a petition to terminate parental rights with "the court"). The court's prescribed role in Title 14 adjudications is substantially different from that of the Department, and from the court's prescribed role in deciding divorce action under Title 20. *See* Wyo. Stat. Ann. § 20-2-106(c) (LexisNexis 2019) (outlining the court's role to "make such orders as appear just" with regard to children's custody, support provisions, division of marital property, alimony, and restraint of the parties and marital property). Where pertinent, the legislature cross-referenced Titles 14 and 20. *See, e.g.*, Wyo. Stat. Ann. § 20-2-401 (cross-referencing statutes from Title 14 which apply); *see also* Wyo. Stat. Ann. § 14-3-435 (cross-referencing statutes from Title 20 which apply). Section 14-2-206 contains no such cross reference to the court's authority under Title 20. Absent any indication that the legislature intended § 14-2-206 to apply to the district court's determination regarding custody and visitation under Title 20, we conclude the district court violated no legal principle and did not abuse its discretion when it imposed supervised visitation without considering § 14-2-206. *Jacobson*, ¶ 14, 426 P.3d at 820.

### B. Finding That Father Abused the Children

[¶17] Father baldly asserts that the "court's broad finding that [Father] abused the children is not supported by the evidence in the record." We reject this assertion because Mother's evidence and the favorable inferences to be derived therefrom more than support the court's finding.[1] *Jacobson*, ¶ 14, 426 P.3d at 820.

---

[1] We also reject Father's assertion that the district court improperly used Father's controlling behavior as a factor in imposing supervised visitation. Father cites no pertinent authority to support his argument and apparently would have us overturn the district court based on his view of the evidence and the number of times the court used the words "control" or "controlling" in a negative context about Father, as compared to Mother. This unsupported argument does not warrant further consideration. *Wallop v. Wallop*, 2004 WY 46, ¶ 47, 88 P.3d 1022, 1034 (Wyo. 2004) (citation omitted).

[¶18] Mother's testimony established that to discipline one of the children when she was five or six years old, Father pulled her off the top bunk bed, held her with both legs up, and "wa[iled] on her" in front of her sister until Mother intervened. Mother's testimony showed that Father routinely abused Mother. She testified that Father "put[] his hands around" her neck and "threw [her] down some flights of stairs." Father's abuse often occurred in front of the children. He testified to one event, during "a verbal altercation" between he and Mother, where she slammed the bedroom door and he decided "to make a statement" by taking the door off the hinges and replacing it a week later. Mother recalled that Father "tore [the door] off the hinges and broke it" in front of the children. Mother also testified that he shot and killed three family pets in front of the children, or with the children's knowledge. We have recognized that "[c]hildren are victimized by a climate of violence existing between their parents, even if they are not direct targets of the abuse." *RS v. Dept. of Family Servs.* (*In re KLS*), 2004 WY 87, ¶ 21, 94 P.3d 1025, 1030–31 (Wyo. 2004) (citation omitted). The district court made no mistake in finding Father abused the children.

### C. Conditioning Visitation on Children's Mental Health Counseling

[¶19] Father challenges the court-imposed "condition" that if Father wished to transition from supervised to unsupervised visitation with his children, he was responsible for the cost of the children's mental health counseling and that he:

> obtain an anger evaluation, provide that evaluator a copy of this decision, and shall begin regular sessions with a licensed counselor. Once Father's counselor provides proof of compliance with the recommendations in the anger evaluation, and once the counselor has conferred with the children's counselor(s) and all the counselors approve, visitation shall graduate to unsupervised visitation[.]

He argues, but cites no authority, that the court abused its discretion by imposing this condition without appointing a guardian *ad litem* for the children, or meeting, interviewing, or hearing testimony from the children. The law and the record amply support the court's finding that it was in the children's best interests to condition Father's visitation as it did. *Jacobson*, ¶ 14, 426 P.3d at 820.

[¶20] As stated above, domestic violence and spousal abuse are always contrary to the children's best interests. *Gjertsen*, ¶ 39, 347 P.3d at 1128; *see also Williams v. Williams*, 2016 WY 21, ¶ 18, 368 P.3d 539, 545 (Wyo. 2016), *overruled on other grounds by Bruegman*, 2018 WY 49, 417 P.3d 157. Upon a finding of spousal abuse or child abuse, the court has considerable discretion to "make arrangements for visitation that best protects the children and the abused spouse from further harm." *Williams*, ¶ 18, 368 P.3d at 545 (quoting Wyo. Stat. Ann. § 20-2-201(c) (LexisNexis 2015)). Mother testified at length

about Father's history of abusing her and the children, and that she and one of their daughters—who had "resorted to self harm"—were attending counseling at the time of trial to address emotional difficulties. In light of this evidence and the court's finding "that this is a high conflict case with serious risks to [Mother] and the children[,]" we have little trouble concluding that the court reasonably conditioned Father's unsupervised visitation upon counseling for both him and the children "to work toward reunification."

## II.     *Division of Marital Property*

[¶21]  Father presents a piecemeal attack on that portion of the court's divorce decree dividing marital property, generally gravitating toward the court's award of the marital home and its equity to Mother. He argues the court erred first when it considered various evidence to establish the parties' merits; second, when it failed to establish his pension's present value; and third, when it awarded to Mother the marital home's equity without first extracting and awarding to Father an amount equal to his pre-marital tort award.[2] The court did not abuse its discretion for any of these reasons.

[¶22]  Wyo. Stat. Ann. § 20-2-114 governs the disposition of marital property, and states in relevant part that a court:

> shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

Wyo. Stat. Ann. § 20-2-114(a) (LexisNexis 2019). The disposition of marital property is "committed to the sound discretion of the district court." *Porter v. Porter*, 2017 WY 77, ¶ 12, 397 P.3d 196, 198 (Wyo. 2017) (citation omitted). This Court "will not disturb a property division in a divorce case, except on clear grounds, as the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions." *Sinclair v. Sinclair*, 2015 WY 120, ¶ 7, 357 P.3d 1100, 1102 (Wyo. 2015) (quoting *Bagley v. Bagley*, 2013 WY 126, ¶ 7, 311 P.3d 141, 143 (Wyo. 2013)). "We are

---

[2] Although the parties do not appear to dispute that Father's tort award was for $64,735, there is some dispute as to how much of that award was used as a down payment—Father claims the parties used $62,000 and Mother claims they used $57,000.

not free to retry the case on appeal or substitute our judgment for that of the district [court]." *Porter*, ¶ 16, 397 P.3d at 199 (citing *Lopez v. Lopez*, 2005 WY 88, ¶ 20, 116 P.3d 1098, 1103 (Wyo. 2005)).

[¶23] The district court first addressed the parties' respective merits. "Merit is deservedness, goodness." *Grosskopf v. Grosskopf*, 677 P.2d 814, 819 (Wyo. 1984). The court had to consider "each party's role in, and contributions to, the marriage and the property." *Stoker v. Stoker*, 2005 WY 39, ¶ 23, 109 P.3d 59, 65 (Wyo. 2005). It acknowledged Father's significant contributions to the marital estate—stating that "[t]he Parties' equity in the marital home would not have accumulated without [Father]"—but then weighed Father's contribution against his conduct during the marriage and Mother's contribution to the family. More particularly, the court considered Father's "physical, emotional, and psychological abuse" of Mother throughout the marriage. It also remarked that there would be no family "without [Mother's] motherly acumen and hard work."

[¶24] Next, the court considered the condition in which each party would be left by the divorce. We have stated that "it is necessary to consider not only to whom the property will be awarded, but also who will be responsible for any debt relating to that property." *Dane v. Dane*, 2016 WY 38, ¶ 31, 368 P.3d 914, 920 (Wyo. 2016). The court focused its attention on Father's ability to earn approximately four times more income than Mother. While Father then earned "more than $42.00 per hour[,]" Mother left "the marriage with a limited work history outside the marital home."

[¶25] Finally, with respect to Father's claims, the court considered Father's pre-marital tort award. The court acknowledged the tort award was attributable to Father only, and that Father had contributed it to cover the down payment to purchase the land on which they built the home. But they both owned the land, and they both signed for and took out a construction loan to build the home. The court ultimately found "that the house and acreage is a marital asset owned by both" parties, and awarded Mother the entire property, "together with its equity." Mother was required to refinance the remaining debt.

## A. The Respective Merits of the Parties

[¶26] Father argues the court erroneously relied on hearsay evidence of Father's abuse "to punish [him]" through the property distribution, specifically pointing to the court's admission of Exhibit 8, a copy of Mother's journal entries recounting Father's abuse of her during their marriage, and testimony concerning Father's death threat against Mother.[3] Mother's testimony alone supported the court's finding that Father abused Mother.

---

[3] Father threatened to kill Mother during a conversation with his sister. His sister relayed that threat to a Colorado law enforcement officer. The Colorado law enforcement officer detailed that threat in a report (Exhibit 23). A Wyoming deputy located in the same county as Mother received that report, and discussed it with Mother.

Accordingly, there was little risk that Exhibit 8 unfairly influenced the court's evaluation of the respective merits of the parties. *Cf. Shindell v. Shindell*, 2014 WY 51, ¶ 16, 322 P.3d 1270, 1275 (Wyo. 2014) (reasoning that testimony about an exhibit excluded from the record—which "was obviously hearsay"—made the exhibit "essentially meaningless" as the testimony put the evidence before the court notwithstanding the court's exclusion of the exhibit).

[¶27]  With respect to admission of hearsay testimony about Father's death threat against Mother, "[t]his [C]ourt has long held that issues not brought before the district court may not be reviewed on appeal" unless they are jurisdictional or fundamental in nature. *Wallop*, ¶ 47, 88 P.3d at 1034 (citation omitted).  Father agreed during trial that witnesses could testify to hearsay, and did not object to the Wyoming deputy's testimony about the content of the Colorado police report or to Mother's testimony relaying what the deputy told her concerning the death threat.  We will not address Father's challenge to this testimony for the first time on appeal.[4]  *Id.*

### B. Father's Pension

[¶28]  For the first time on appeal, Father argues that the court erred by not conducting a present-day valuation of his pension, reasoning that the court needed to know the value of property in order to make a "just and equitable" distribution.  He attempts to justify his failure to make this argument at trial by asserting that Mother "sandbagged" him by changing her position as to the disposition of the marital home on the day of trial.  His argument on this issue is not cogent.  Having been denied the opportunity to address Father's concerns at trial, we conclude that the district court did not abuse its discretion by awarding Father his pension without calculating its present-day value.  *Id.*

### C. Pre-marital Tort Award

[¶29]  Father reads the sentence from *Dane*, ¶ 30, 368 P.3d at 920, where we stated that "[i]t is appropriate to identify the party through whom property was acquired and award it to that party regardless of whether that results in an equal division of marital assets," out of context to support his assertion that he was entitled to return of his pre-marital tort award in the marital distribution.  While it may be appropriate to return the property to the contributing party under the circumstances of a particular case, *see id*. ¶ 32, 368 P.3d at 920, we have never stated a court must award property to the party through whom it was acquired.  In fact, we have stated just the opposite, recognizing that "previous cases have

---

[4] Father also complains that the court "disparaged [him] for controlling the finances" when it should have weighed that control in his favor.  We will not reweigh factors on appeal. *See Porter*, ¶ 16, 397 P.3d at 199 (citing *Lopez*, ¶ 20, 116 P.3d at 1103).  Father also fails to account for the district court's recognition that Father's control was a double-edged sword when it came to the family's finances.  While the court credited Father's frugality as the reason the parties' have the level of equity in the marital home, it also suggested that his "control" inhibited Mother from equally contributing to the marital estate.

established that a party is not automatically entitled to all of that property." *Zaloudek v. Zaloudek*, 2009 WY 140, ¶ 16, 220 P.3d 498, 502–03 (Wyo. 2009) (citing *Humphrey v. Humphrey*, 2007 WY 72, ¶ 12, 157 P.3d 451, 454 (Wyo. 2007)).

[¶30]   The court had considerable discretion to dispose of the property as appeared "just and equitable." Wyo. Stat. Ann. § 20-2-114(a); *see also McMurry v. McMurry*, 2010 WY 163, ¶ 9, 245 P.3d 316, 320 (Wyo. 2010).   In exercising its discretion, the court acknowledged that the parties used the pre-marital tort award to purchase the property on which they built the marital home, but it weighed that contribution with other factors such as the respective earning abilities of Mother and Father to determine a just and equitable property division.

> The court finds it is most important that [Mother] and the children have a stable home that is adequate and affordable where they can live after the divorce.  [Father] has earning abilities that far exceed those of [Mother].  Although [Father] has argued the home and acreage require more care than [Mother] can provide to keep it up, the [c]ourt finds [Mother] is able to care for the property adequately.

The court did not abuse its discretion in weighing the competing concerns and awarding the home to Mother without extracting from the equity an amount equal to Father's pre-marital tort award. *See Jacobson*, ¶ 14, 426 P.3d at 820.

### III.   *Child Support*

[¶31] Father argues that the district court abused its discretion when it found him voluntarily underemployed and imputed to him income equivalent to that which he earned while working overtime more than 24 months preceding trial.  We agree, and conclude that the plain meaning of Wyo. Stat. Ann. § 20-2-303(a)(ii) prohibits a court from considering overtime not worked in the preceding 24-month period when determining whether a party is voluntarily underemployed.

[¶32] At trial, Mother presented two separate child support calculations utilizing the statutory presumptive formula in § 20-2-304.  She based her first calculation on Father's 2017 net monthly earnings of $6,215, which would require Father pay $1,870 per month. The parties agreed that this calculation represented the statutory presumptive amount of child support.  However, Mother pointed to Father's refusal to work overtime since 2015, and argued that the court should instead base its calculation of child support on Father's income while he worked overtime.  She offered her second calculation using Father's 2013

13

and 2014 net monthly earnings of $8,310. The second calculation would require Father to pay $2,300 per month.[5] The court found:

> Beginning May 1, 2019, Father shall pay Mother child support in the sum of $2,300.00 each month. Under W.S. § 20-2-307(b)(xi), the Court has deviated from the presumptive amount, calculated under W.S. § 20-2-304(a)(iv), and finds Father has the employment experience, history, and training to take advantage of lucrative and regularly available overtime opportunities. The Court further finds Father has repeatedly forfeited overtime and purposely remained under-employed. His supervisor testified that Father is realistically able to earn the imputed income. Consequently, the child support calculation is based upon Father's monthly income of $8,310.00.

[¶33] "While the district court exercises discretion in establishing child support, that discretion is guided by the applicable statutory provisions." *Opitz v. Opitz*, 2007 WY 207, ¶ 8, 173 P.3d 405, 408 (Wyo. 2007) (citations omitted). Section 20-2-304 establishes the guidelines for calculating the statutory presumptive child support, "based on factors including the parents' respective incomes," among other factors. *Id.*; *see Plymale v. Donnelly*, 2007 WY 77, ¶¶ 31–33, 157 P.3d 933, 940 (Wyo. 2007). When computing the parents' respective incomes, the statute specifies which sources of income a court may properly consider. Wyo. Stat. Ann. § 20-2-303(a)(ii).

> (ii) "Income" means any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor, **but shall not include any earnings derived from overtime work unless the court, after considering all overtime earnings derived in the preceding twenty-four (24) month period, determines the overtime earnings can reasonably be expected to continue on a consistent basis.** In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted. Means tested sources of

---

[5] Father's net monthly earnings in 2013 were approximately $8,008, and in 2014 were approximately $8,611.

income such as Pell grants, aid under the personal opportunities with employment responsibilities (POWER) program, supplemental nutrition assistance program and supplemental security income (SSI) shall not be considered as income. **Gross income also means potential income of parents who are voluntarily unemployed or underemployed;**

*Id.* (emphasis added).

[¶34] Wyo. Stat. Ann. § 20-2-303(a)(ii) is clear and unambiguous. "We must therefore give effect to the plain and ordinary meaning of the words used in it, and we need not invoke our longstanding rules of statutory construction." *Dellit v. Tracy*, 2015 WY 153, ¶ 20, 362 P.3d 353, 357 (Wyo. 2015) (citation omitted). The statute clearly prohibits the district court from including in its child support calculation "any earnings derived from overtime work unless the court, after considering all overtime earnings derived in the preceding twenty-four (24) month period, determines the overtime earnings can reasonably be expected to continue on a consistent basis." Wyo. Stat. Ann. § 20-2-303(a)(ii). Here, the court exceeded this express limitation on the inclusion of overtime income when, under the guise of voluntary underemployment, it considered and imputed to Father overtime income earned more than 24 months prior to Mother's divorce action.[6]

[¶35] We recognize that § 20-2-307(b)(xi) permits a court to deviate from the statutory presumptive amount and impute income to a voluntarily underemployed parent. Although subsection -307(b)(xi) nowhere mentions overtime, subsection (G) requires the court making a voluntary underemployment determination to consider "[w]hether the parent is realistically able to earn imputed income." Subsection -303(a)(ii) itself defines "gross income" to include the potential income of a voluntarily underemployed parent. The definition of "gross income" does not, however, provide any exception to the earlier, explicit limitation on the inclusion of overtime earnings. *See* Wyo. Stat. Ann. § 20-2-303(a)(ii). Consequently, the statute limits a court's authority to impute potential overtime income to a consideration of "all overtime earnings derived in the preceding twenty-four (24) month period," which "can reasonably be expected to continue on a consistent basis." *See id.* The district court abused its discretion when it circumvented this express statutory limitation. *Fink*, 685 P.2d at 36.

---

[6] Father suggests that the statute's 24-month period counts back from the date of trial, but neither the statute nor our precedent specify the date from which the court should count back under Wyo. Stat. Ann. § 20-2-303(a)(ii). Even if we count back from the date Mother filed the divorce action, the result is the same. Mother asked the court to base child support on Father's 2013 and 2014 net income, which included "overtime earnings [Father] derived" more than 24 months before Mother filed the action in July 2017. Wyo. Stat. Ann. § 20-2-303(a)(ii).

[¶36] Because the court imposed no other deviation(s) from the presumptive child support amount, we reverse the portion of the court's order calculating child support and remand with instructions that the court order Father to pay the presumptive child support amount of $1,870.

## IV.    *Attorneys' Fees*

[¶37] Mother requests that we award her costs and attorneys' fees pursuant to W.R.A.P. 10.05(b) on the basis that Father's appeal lacks cogent argument and citation to pertinent legal authority. Rule 10.05(b) provides: "If the court certifies, whether in the opinion or upon motion, there was no reasonable cause for the appeal, a reasonable amount for attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case." We have often recognized that such "sanctions are generally not available for challenges to discretionary rulings, unless 'an appeal lacks cogent argument, there is an absence of pertinent legal authority to support the issues, or there is a failure to adequately cite to the record.'" *Deede v. Deede*, 2018 WY 92, ¶ 10, 423 P.3d 940, 943 (Wyo. 2018) (quoting *Carbaugh v. Nichols*, 2014 WY 2, ¶ 23, 315 P.3d 1175, 1180 (Wyo. 2014)). Because we reversed the district court's child support award, we cannot certify that Father's appeal lacked reasonable cause. *Cf. id.* ¶ 11, 423 P.3d at 944 (reluctantly certifying that there was no reasonable cause for Mr. Deede's appeal where his four-page brief cited two cases pertaining to the abuse of discretion standard of review but none pertaining to the substantive legal issue, his entire argument consisted of three sentences that failed to adequately explain his argument, and he cited facts that were not contained in the record). Mother therefore is not entitled to sanctions under W.R.A.P. 10.05.

[¶38] Section 20-2-111, however, authorizes an award of attorneys' fees when necessary "to carry on or defend" an action brought for divorce. Wyo. Stat. Ann. § 20-2-111. We have applied this provision to award costs and attorneys' fees incurred in defending an appeal. S*ee Jensen v. Milatzo-Jensen*, 2014 WY 165, ¶ 25, 340 P.3d 276, 283 (Wyo. 2014). Mother necessarily incurred additional expense in having to defend against Father's extensive, but largely baseless, challenges to the district court's order on visitation and property division. The district court found, and Father did not contest, that Father could earn about four times more income than Mother, and that Mother left the marriage with a limited work history. Mother is now an hourly employee of the Town of Mountain View, earning approximately $14 per hour. For these reasons, we conclude that reimbursement of certain costs and attorneys' fees is justified under Wyo. Stat. Ann. § 20-2-211. *Id.*

## *CONCLUSION*

[¶39] The district court did not abuse its discretion in ordering supervised visitation or dividing the marital property. We therefore affirm those portions of the court's divorce decree, and upon receipt of a statement of related costs and attorneys' fees will enter an

order making an appropriate award to Mother under Wyo. Stat. Ann. § 20-2-111. The court did abuse its discretion when it found Father was voluntarily underemployed and ordered that he pay $2,300 in child support instead of the presumptive child support amount of $1,870. We therefore reverse the portion of the court's order calculating child support and remand with instructions that the court order Father to pay the presumptive child support amount of $1,870.